COFFMAN *v.* BREEZE CORPORATIONS, INC. ET AL.

No. 71. Argued December 7, 1944.—Decided January 2, 1945.

*Messrs. James D. Carpenter, Jr.* and *John G. Buchanan,* with whom *Mr. William H. Eckert* was on the brief, for appellant.

*Assistant Attorney General Shea,* with whom *Solicitor General Fahy* and *Messrs. Paul A. Freund* and *Jerome H. Simonds* were on the brief, for the United States, appellee.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question is whether this suit, brought in the District Court by appellant, a patent owner, to enjoin his licensees from paying accrued royalties to the Government under the Royalty Adjustment Act of October 31, 1942, 56 Stat. 1013, 35 U. S. C. Supp. III, §§ 89–96, and attacking the constitutionality of the Act, was rightly dismissed for want of equity jurisdiction and for want of a justiciable case or controversy.

Appellant brought the present suit in the District Court for New Jersey, joining as defendants Federal Laboratories, Inc., a Delaware corporation, and appellee Breeze Corporations, Inc., a New Jersey corporation. Federal was not served with process and did not appear, and the cause has proceeded against appellee Breeze alone. The case being one in which the constitutionality of an Act of Congress is challenged and in which a preliminary and final injunction is asked restraining "the enforcement, operation, or execution of, or setting aside, in whole or in part" of an Act of Congress on the ground of its unconstitutionality, a court of three judges was convened to hear the cause pursuant to § 3 of the Act of August 24, 1937, 50 Stat. 752, 28 U. S. C. § 380 (a).[1]

---

[1] The District Court of three judges was rightly convened, although the suit was brought against private parties not public officers. Unlike § 266 of the Judicial Code, 28 U. S. C. § 380, the Act of August 24, 1937 does not restrict its requirement for the assembly of a dis-

Appellee Breeze answered. Upon appropriate proceedings had under 50 Stat. 751, 28 U. S. C. § 401, the United States was permitted to intervene as a party. Thereupon the District Court granted the Government's motion to dismiss the suit for want of equity jurisdiction and of a justiciable case or controversy. 55 F. Supp. 501. The case comes here on appeal under § 3 of the Act of August 24, 1937, c. 754, 50 Stat. 752, 28 U. S. C. § 380 (a), authorizing direct appeals to this Court in a case where a district court of three judges convened pursuant to the section has

trict court of three judges to suits against public officers. See *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.*, 292 U. S. 386. Section 3 of the Act of 1937 directs that a court of three judges is to be convened whenever an interlocutory or permanent injunction is sought "suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any Act of Congress" upon the ground that it is repugnant to the Constitution. This language appears to have been taken from the Urgent Deficiencies Act of 1913, 28 U. S. C. § 47. Its choice of language, differing from that of § 266 of the Judicial Code, must be taken to be deliberate. See *Jameson & Co.* v. *Morgenthau,* 307 U. S. 171, 173.

Here the injunction sought would restrain appellee from payment of the royalties into the Treasury as required by the Act of Congress and would thus restrain the "operation" or "execution" of the statute. Like interpretation has been given to the like language of the Urgent Deficiencies Act of 1913. See *Lambert Run Coal Co.* v. *B. & O. R. Co.*, 258 U. S. 377; *Venner* v. *Michigan Central R. Co.*, 271 U. S. 127.

*Garment Workers' Union* v. *Donnelly Co.*, 304 U. S. 243, is to be distinguished from the present case. There an injunction was sought against a labor union for violation of the anti-trust laws, the plaintiff appellee contending that the Norris-LaGuardia Act, 47 Stat. 70, 29 U. S. C. § 101, was inapplicable or, if applicable, unconstitutional. This Court held that a district court of three judges was unauthorized by § 3 of the 1937 Act, since the contention with respect to the Norris-LaGuardia Act was not an application for an injunction within the meaning of § 3, but merely an anticipation of a defense going to the jurisdiction of the court. Even though the Norris-LaGuardia Act were applicable, it could not, if unconstitutional, operate as a defense, and no case was made for an injunction.

entered "judgment granting or denying, after notice and hearing, an interlocutory or permanent injunction in such case."

The facts appear from the pleadings and by stipulation, and are admitted for the purposes of the motion. Appellant, the owner of a United States patent covering an improvement upon a device for use in starting a combustion motor, and shells for use with the device, entered into an agreement licensing Federal to manufacture and sell the patented device at a royalty of 6% of the licensee's selling price of the device and its parts. At some time before July 1937, appellee Breeze acquired all of Federal's outstanding shares of capital stock and has since controlled its business and policies. In 1937 it entered into a contract, since renewed and continued with Federal, whereby the latter engaged Breeze as its exclusive "sales agent and distributor" to manufacture and sell the patented device. Breeze began the manufacture and sale of the patented device, and from the allegations of the bill of complaint it appears, inferentially at least, that it has been engaged to some extent, not disclosed, in supplying the War and Navy Departments with the patented device under government contracts.

The Royalty Adjustment Act provides that whenever a patented device is "manufactured, used, [or] sold . . . for the United States" under a license stipulating for payment of royalties "believed to be unreasonable or excessive" by the head of the government agency concerned, he "shall give written notice of such fact to the licensor and to the licensee." It provides that within a reasonable time thereafter the head of the agency "shall by order fix and specify such rates or amounts of royalties, if any, as he shall determine are fair and just, taking into account the conditions of wartime production." The Act directs the licensee, after the effective date of the notice, not to "pay to

the licensor, nor charge directly or indirectly to the United States a royalty, if any, in excess of that specified in said order on account of such manufacture, use, sale or other disposition."

The Act deprives the licensor of "any remedy . . . against the licensee for the payment of any additional royalty remaining unpaid." It provides that his "sole and exclusive remedy, except as to the recovery of royalties fixed in said order" is a suit against the United States "to recover such sum, if any, as, when added to the royalties fixed and specified in such order, shall constitute fair and just compensation to the licensor for the manufacture, use, sale, or other disposition of the licensed invention for the United States, taking into account the conditions of wartime production." By § 7 the Act is made applicable "to all royalties directly or indirectly charged or chargeable to the United States" which "have not been paid to the licensor prior to the effective date of the notice," as well as to royalties accruing upon all articles delivered after the effective date. By § 4 any reduction in royalties authorized by the Act is to "inure to the benefit of the Government by way of a corresponding reduction in the contract price to be paid . . . or by way of refund if already paid to the licensee."

Pursuant to § 1 of the Act the Navy Department on February 24, 1943, gave notice to appellant, appellee Breeze and Federal that the royalties provided for by the license contract "now being paid directly or indirectly" under contracts in which Federal or Breeze "is either a prime contractor or a subcontractor are believed to be unreasonable or excessive." The notice directed that, until a royalty adjustment order should be issued under the Act, "no royalties should be paid on account of the manufacture, use, [or] sale . . . for the United States" of the patented device. A similar notice was given by the War Depart-

ment to the same parties on March 3, 1943. In December, 1943, the War and Navy Departments issued royalty adjustment orders under § 1 of the Act, purporting to reduce to specified amounts, declared to be "fair and just," the royalties accruing on the manufacture and sale of the patented device for the War and Navy Departments, with maximum royalties of $50,000 per year commencing January 1, 1943. The orders further directed Federal and Breeze to pay to the Treasurer of the United States "the balance in excess" of the royalty payments authorized by the orders "which were due to Licensor and were unpaid on the effective date" of the notice, or which might thereafter become due to the licensor.

According to the bill of complaint there are large amounts due and owing to appellant as royalties under its license contract with Federal and the contract between Federal and Breeze. It also appears that appellant has brought a separate suit in the United States District Court for New Jersey against Breeze and Federal for an accounting for the royalties said to be due to appellant, in which Breeze alone was served by process and has appeared and answered. The cause is at issue, and the court has ruled that appellant recover all royalties which have accrued or may accrue to the date of trial.

The answer of appellee Breeze in the present suit denies that it owes any royalties to appellant. It alleges that whether the Royalty Adjustment Act is valid or invalid is a matter which is immaterial to appellee for the reason that it owes appellant no money as royalties or otherwise. In the present suit appellant asks no judgment for the recovery of the royalties alleged to be due from Federal and appellee Breeze. It seeks only an adjudication that the Royalty Adjustment Act and the orders purporting to be made in conformity to it are unconstitutional as applied to appellant, and asks an injunction restraining Breeze and

Federal from complying with the Act and the orders by paying any part of the royalties into the Treasury or to any person other than appellant.

We agree with the conclusion of the District Court below that appellant's bill of complaint states no cause of action in equity and presents no case or controversy within the judicial power of the United States as defined by § 2 of Article III of the Constitution.

The only rights asserted as the basis for the relief sought by appellant are derived from the license agreements. Those agreements, so far as now appears and as we assume for present purposes, are contractual obligations to pay the stipulated royalties. As they accrue, the royalties become simple debts recoverable in an action at law, or possibly, where the accounts are complicated, in a proceeding for an accounting such as appellant has already begun in its separate suit pending in the District Court of New Jersey. *Kirby* v. *Lake Shore & M. S. R. Co.*, 120 U. S. 130; *United States* v. *Old Settlers,* 148 U. S. 427, 465.

Appellant does not in the present suit bring to our attention any facts showing or tending to show that a suit to recover a money judgment for the royalties would not afford complete and adequate relief without resort to an equitable remedy. In such a suit if appellee Breeze is obligated by the contracts in question to pay the royalties to appellant, it can discharge that obligation only by payment of the amount due, or by setting up the Royalty Adjustment Act as a defense. Compliance with the duty under the Act to pay into the Treasury the royalties withheld from appellant would operate by the terms of the Act as a discharge of the obligation to pay appellant. If that defense were offered, the constitutional validity of these provisions of the Act would be a justiciable issue in the case, since upon its adjudication would depend appellant's right of recovery.

But whether the provisions of the Act be valid or invalid appellant shows no ground for equitable relief. If valid they would be a defense, and appellant would be entitled to no relief other than that afforded by the suit against the Government authorized by § 2 of the Act. If invalid, appellant's right to recover remains unimpaired. The sufficiency of the defense may be as readily tested in a suit at law to recover the royalties as by the present suit in equity to enjoin payment of the royalties into the Treasury. In either case appellant would receive all the relief to which it shows itself entitled.

The obligation to pay royalties, as we have said, appears to be no more than a debt. There is no contention that it is a fiduciary obligation to turn an earmarked fund over to appellant. The complaint does not indicate that if appellee is not enjoined it will pay the royalties into the Treasury, or, if it does, that appellee will be unable to respond to a judgment in appellant's favor. Appellant thus fails to assert any right of recovery at law in the present suit or to show that its remedy available at law is so inadequate as to entitle it to ask an equitable remedy. Judicial Code, § 267 (28 U. S. C. § 384); *Boise Artesian Water Co.* v. *Boise City,* 213 U. S. 276, 283; *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491, 497; *Hurley* v. *Kincaid,* 285 U. S. 95, 105; *Schoenthal* v. *Irving Trust Co.,* 287 U. S. 92, 94.

So far as the present suit seeks a declaratory judgment or an injunction restraining payment of the royalties into the Treasury, it raises no justiciable issue. Appellant asserts in the present suit no right to recover the royalties. It asks only a determination that the Royalty Adjustment Act is unconstitutional and, if so found, that compliance with the Act be enjoined, an issue which appellee by its answer declines to contest. If contested the validity of the Act would be an issue which, so far as it could ever

324

become material, would properly arise only in a suit to recover the royalties, where it could be appropriately decided.

In the circumstances disclosed by the record and for purposes of the present suit, the constitutionality of the Act is without legal significance and can involve no justiciable question unless and until appellant seeks recovery of the royalties, and then only if appellee relies on the Act as a defense. The prayer of the bill of complaint that the Act be declared unconstitutional is thus but a request for an advisory opinion as to the validity of a defense to a suit for recovery of the royalties. Appellee could have made such a defense but does not appear to have done so in the pending accounting suit and does not assert its validity here. The bill of complaint thus fails to disclose any ground for the determination of any question of law or fact which could be the basis of a judgment adjudicating the rights of the parties.

The declaratory judgment procedure is available in the federal courts only in cases involving an actual case or controversy, *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249, 258–264; *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 239–240, where the issue is actual and adversary, *Chicago & Grand Trunk R. Co.* v. *Wellman,* 143 U. S. 339; *South Spring Gold Co.* v. *Amador Gold Co.,* 145 U. S. 300, 301, and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen. *New Jersey* v. *Sargent,* 269 U. S. 328; *United States* v. *West Virginia,* 295 U. S. 463; *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 324; *Anniston Manufacturing Co.* v. *Davis,* 301 U. S. 337, 355; *Electric Bond & Share Co.* v. *S. E. C.,* 303 U. S. 419, 443.

In any case, the Court will not pass upon the constitutionality of legislation in a suit which is not adversary, *Chicago & Grand Trunk R. Co.* v. *Wellman, supra; Bartemeyer* v. *Iowa,* 18 Wall. 129, 134–35; *Atherton Mills* v.

*Johnston,* 259 U. S. 13, 15, or upon the complaint of one who fails to show that he is injured by its operation, *Tyler* v. *The Judges,* 179 U. S. 405; *Hendrick* v. *Maryland,* 235 U. S. 610, 621, or until it is necessary to do so to preserve the rights of the parties. *Liverpool, N. Y. & P. S. S. Co.* v. *Commissioners,* 113 U. S. 33, 39; *Burton* v. *United States,* 196 U. S. 283, 295; *Abrams* v. *Van Schaick,* 293 U. S. 188; *Wilshire Oil Co.* v. *United States,* 295 U. S. 100.

*Affirmed.*